23125 Council are here in the courtroom, or for the City of New York Council is on Zoom. Is that correct? Yes, sir. Counsel, Ms. West, can you hear us? Yes, Your Honor. Can you hear me? Yes. Thank you. You may proceed. Good morning. May it please the Court. My name is Michael O'Neill. I represent the plaintiff and the appellant here. This is a case which I believe is much larger than the sum of its parts, and I'd like to start with the retaliation aspect. In the lower court, it dismissed the retaliation claim based on a lack of causal connection, which is a prima facie stage. Now, in its brief in opposition, the city has not really argued that the judge was correct. In other words, they didn't oppose the argument I made on prima facie, but they went straight to pretext, which they didn't do in the lower court, and they based it on a Collins argument, which doesn't fit here because there was no hearing. It's called a hearing. It's a grievance stage. It's conducted by management, and there's no witnesses. There's no testimony taken. There's nothing hearing about it. In fact, Defendant Starker testified that it's not a hearing, and so Collins doesn't fit. So I don't think that Defendant really has challenged our appeal on the retaliation claim so much. I'd like to just talk a little bit about the facts here on that. Could I ask you to speak just a little louder? You know, the masks muffle everything. You might want to be able to put those two microphones in. Sure, sure. Thank you. Thank you, Your Honor. How's that? Is that better? All right. Plaintiff filed his EEO charge in the middle of 2012. In April of 2013, he filed a state court action against the city and one of its—his supervisor at the time. There was motion practice in the state court, and in November of 2013, he amended his complaint. And in the amended complaint, he goes into some detail regarding the activities, the indiscretions of Defendant Sanginito, who was in charge of the Brooklyn office at that time. As a result of those allegations, the ACS EEO office conducted an investigation of Sanginito. Now, a complaint had been made against Sanginito for the same conduct a couple of years earlier, but they had done nothing. Now, probably because of a plaintiff's lawsuit, they decided to investigate it. That was in November of 2013. The investigation is going on in December. In January, plaintiff goes to Sanginito and complains about his supervisor, who's yelling and screaming at him, and he doesn't feel comfortable. He thinks that he just isn't comfortable with it. Sanginito says, well, I have discretion whether to deal with it or not, and if you don't like it, you can go to EEO. Now, it's our contention that that reference to going to EEO is a reference to his protected activities. If my client was going to complain about rude behavior, you wouldn't go to EEO, you'd go to ELU, the Employment Law Unit. So Sanginito obviously knows the difference between those two segments of ACS. We just argue that it's a reference to his protected activities. About two or three weeks after that is when this— for that protected activity. What is the evidence of actual retaliation that is not— I want to make sure I understand your question, Your Honor. The retaliatory conduct was this bringing him up on charges and suspending him for 60 days. That's the principal damages or harm that were challenging here. That whole thing was initiated by Sanginito, and there is a great deal of evidence that he ignored the facts. There was a court officer who said he didn't hear anything. Sanginito sent it immediately to Sputz. He didn't send it to ELU first. He sent it to Sputz, who then shared it with the general counsel. And then Sputz and the general counsel called up the agency and apologized for my client's conduct before they even heard my client's side of the story. They'd already decided— No, it's evidence of pretext. It's evidence that they'd made their mind up to bring charges against him before they even heard his side of the story. Why would that indicate that they were going to bring charges against him? Because— I mean, one deals with clients a certain way, right? I mean, I don't get why the fact that they said, sorry, this happened, is somehow evidence that now they're going to crucify your client. They then conduct an investigation, right? No, they—I don't know what they did. There's no investigation as such. There's no paper investigation. So when they don't investigate him, that's evidence of pretext. When they do investigate him, that's discriminatory. I mean, your complaint—the adverse employment action that you complain about in the first place is that they spent too much time investigating. Well, it's more than just too much time, Your Honor. It's these questions that they asked his co-workers, which were just basically made up out of the blue, the intrusion into his personal life, all sorts of things that had nothing to do with the complaint against him. The fact that on the very day that Ms. Schechter revealed that she had some issues with my client, Starker determined that there was no issue. It was a consensual relationship. And that was from day one. They knew it was a consensual relationship. See, this is what gives me pause about this entire case. Here again you're saying, well, they made up their mind immediately that there was— right on the very first day, they knew there was no problem. That kind of precipitate action is a good thing. But apologizing to someone signifies that they made up their mind on the first day based on what they knew at that point, and that's a bad thing. Well, not exactly, Your Honor. And I'll tell you why. First of all, we don't contend that investigating the first complaint was an adverse action. We contend that it became an adverse action when it dragged down for nine months based on allegations that from the beginning were deemed to be not credible about a consensual relationship. So we have no problem with them investigating it. They didn't get plaintiff's side of the story until April, and this complaint came in in January. They asked all these revealing questions to his co-workers. There was no basis for this whatsoever. It shouldn't have gone on for nine months. They shouldn't have interviewed 20 co-workers talking about, you know, lurid sex acts that weren't even in the complaint or had anything to do with it. If we were not persuaded by that argument, that retaliation, do you have other claims of retaliation? We do. When my client filed his charge with the EEOC, he came back and he informed his supervisor the very same day. He said, I've gone to the EEOC because of this investigation going on so long. That was in late June of 2012. Well, almost immediately he's taken off a handful, six or seven or eight special projects he'd been working on where he'd been giving advice, dealing with high-level individuals at ACS. He also asked to be sent back to Brooklyn so he could do his regular job. His regular job was doing courtroom work. And the reason that they put him- Right, so we have the failure to transfer and the special projects issue. That's right. And then there's the- Now, what else? There was a second investigation when the first charge was found to be- No, no, I understand the investigation argument. But I want to focus on the special projects and the transfer. That was not the subject of an EEOC retaliation claim within the normal time. You're arguing relation back. That's correct. That's correct, Judge. I have two questions for you on that, one of which we asked you perhaps to brief, and I'm not sure I understand your position on it. In the Morgan case, the Supreme Court said that discrete discriminatory acts are not actionable if time barred, even when they are related to acts in timely filed charges. And from context, you can tell that what the Supreme Court is talking about is discrete discriminatory or retaliatory acts. So how do we deal with the timeliness of this aspect of your retaliation claim? All right, I understand the question, Your Honor. I don't think it makes a difference. I mean, if you have a cause of action that needs six incidents of a small nature in order to reach the critical mass to be actionable, then if some of them occurred before the 300 days and some occurred after the 300 days, under Morgan, clearly they're all within the statute of limitations. Certainly in our Leniani decision, we provide support for that conclusion. But I'm not sure how you get around the language in Morgan. We haven't addressed what, if any, effect Morgan has on Leniani. So I just want to understand your position on that. Well, the position is that all of the acts would be included. Well, how is that consistent with discrete discriminatory acts are not actionable if time barred, even when they are related to acts in timely filed charges? Well, because of what you referred to as the relation back concept, which is that you don't have to file a separate EEOC charge if you're complaining about retaliatory acts that occur because of the first EEOC charge, and that is while that EEOC charge is pending. So the June or July 2012 EEOC charge was not resolved with a right to sue letter until either late 2013 or, in fact, it was even later. It was 2014, about mid-2014. So in that sense, my client really didn't need to file the second EEOC charge alleging retaliation because all of the retaliation he's claiming about related to his first filing. Well, I take it your position is twofold, then. What you just said suggests that you're relying on our decisions in Owens and Duplan that say that since the whole point of the requirement of going to the EEOC is to give the EEOC a chance to investigate, that if the EEOC is already investigating, it is natural to assume that acts of retaliation will come to light during that investigation and, therefore, there's no need for another charge. That's the position you just took, right? Yes, and indeed, Your Honor, my client did keep the EEOC informed about acts of retaliation that were occurring. Well, and Morgan does speak about there still being room for equity here. So is that what you're saying, that this is where equity comes into play because it would be absurd to require a filing every day? Well, I think that's established law, Your Honor, but I'm always happy to have equity if we can get it. All right, well, let me ask my second question because we've kept you past your time, but my second question is if I understand the city's response to our request for more briefing, they make a point about your client actually being involved in certain special projects even after the first filing of a complaint with the EEOC, which I understand to suggest that you really don't have a prima facie case to show that failing to put him on some special projects when he was put on others is evidence of retaliation. So if I've correctly understood their argument, and they'll explain it if I haven't, what's your response to that? Why should we infer retaliatory intent if he was allowed to either stay on or participate in some special projects? Well, for a couple of reasons, Your Honor. First of all, his affidavit, he outlines the special projects specifically that he was taken off of. I know the city said this in their supplemental brief about him performing special projects. I don't think the record completely backs that up. While I can look at the record while my opponent is addressing the court, I think that what they're relying on is his testimony that generally this is what happens in the unit that he was in. I don't think that there were specific special projects that he testified to, or there may have been one or two, but he had been taken off some very high-profile special projects, which were also working with people who were very high up in the agency, making policy decisions, training manuals, and things of that nature. So I think that if that's the city's response, it would certainly be a question of fact as to whether or not the special projects he was taken off of were counterbalanced by new special projects he was taken on. I think that the record, if— As Judge Lynch pointed out, the rationale for our viewing retaliation claims as sometimes part and parcel of the original discriminatory filing investigation is that the expectation that the EEOC would, in the matter of course, discover the acts of purported retaliation. It's not apparent to me why that would pertain with respect to special projects. I mean, how would they know that there were special projects, that your client was or was not involved in them? Is there any basis for thinking that, yes, indeed, this is the kind of thing they would naturally discover in the course of an investigation? I think so, Your Honor. My experience with the EEOC is they do inquire into what the person's role is, what kind of work they're doing. They communicate with the parties. They ask the party. They ask the complainant. They ask for a great deal of things. And does the plaintiff discuss this in his interactions with the EEOC? Your Honor, I honestly can't answer that. I mean, the EEOC file, I mean, there was a ton of stuff going back and forth. I can look for it. I don't know if it's in the record on this motion. Would that matter? Well, I think it would matter if the court were to hold that it matters. I mean, the doctrine says that if it's going on while the EEOC charge is pending, then they're included. Now, if there's, you know, if that doctrine is shaped a little differently, which is, well, if there's some evidence that the EEOC could have, should have, would have, or did discover this evidence, then, yes, it would matter. But I don't think under present law that it matters. We've kept you well past your time, and you've reserved some time for rebuttal. Thank you. Thank you very much. We'll hear from counsel for the city. Ms. West. Good morning, Your Honors, and may it please the Court. I'm Melanie West for the appellees. I just want to confirm that you can hear me? We can. Yes. Thank you. The plaintiff in this case was investigated by his employer in connection with serious allegations. One investigation ultimately cleared him. Another found that he had engaged in misconduct and sanctioned him. At the end of the day, he remains in his job at the same salary, in the same position. Because he's failed to tie any adverse employment action to his race or gender, the district court correctly dismissed his complaint. Let me start with the first investigation that took place starting in 2012. Neither that investigation nor the transfer, Mr. Connolly's transfer during the investigation, were adverse. He acknowledges that an investigation was warranted and that a temporary transfer was warranted. So his only complaints are about the duration of the investigation and certain specific complaints about how the investigation was conducted. But no authority supports the idea that those kinds of specific and small complaints could amount to an adverse employment action, where he acknowledges that both the investigation and the transfer were warranted. And even if they were somehow adverse, there's zero causal connection between the investigation or the transfer and any discriminatory motive. The investigation uncovered many troubling facts that needed to be investigated, among other things that Mr. Connolly had engaged in relationships with two other junior attorneys at ACS. As these facts came to light, a number of witnesses were interviewed. And so the record amply supports the duration of the investigation and the transfer. And even if it wasn't conducted perfectly, nothing about it gives rise to any inference of discrimination. And I'll turn to the retaliation complaints. So as far as the complaint from the foster care agency, there's nothing to suggest that the investigation into that was retaliatory in any way. The complaint came from an external source, from an agency worker at a foster care agency, not within ACS. Mr. Connolly was afforded not one but two separate opportunities to present his side. He had a step one hearing where he presented his side of the story, and then he invoked his right to a step two administrative hearing, which he attended along with the union representative. And at the end of that, he was found to have engaged in misconduct and was sanctioned with a 60-day suspension. Nothing about that, as the district court correctly found, passes the prima facie test of being retaliatory. And as far as the other alleged retaliation, because, Your Honor, that's about special projects, let me talk about that. First of all, Your Honor, we're talking about a three-month period of time that he's identified that he was taken off of special projects. The plaintiff's 56.1 statement acknowledges that he was actually on other special projects. He references working directly with the deputy commissioner and receiving commendations for work he did on special projects. Where did he work for those concessions? I believe it's in the plaintiff's 56.1, Your Honor. I'm afraid I don't have the paragraphs handy. And also in the defendant's 56.1. I'm sorry, one more time with what you were citing. It's the 56.1 statements, Your Honor, but I'm afraid I don't have them. The 56.1 statements, okay. And then, Your Honor, even if there's some finding that the special projects he was taken off of were more important than those that he continued to be staffed on, this is a three-month period we're talking about, and so it wouldn't rise to the level of an adverse employment action in any event. And then the failure to promote allegations, some of which are time-barred, as the district court correctly found. The others are amply supported by record evidence, contemporaneous notes from the interviewers as to why they didn't deem him to be an appropriate candidate for the positions he applied for. So, Your Honor, unless the court has any questions, the city will rest. How about the transfer to Brooklyn? Is that a separate adverse action, alleged adverse action? I believe that Mr. Connolly, in his brief, acknowledges that a transfer was appropriate while the investigation was taking place. That's at Appellant's brief, page 24 to 26. So what he complains about is the duration of the transfer. But even if it was the transfer itself, he was kept at his same salary and same title. And so it simply doesn't constitute an adverse employment action based on his subjective preference to remain in his role in the Brooklyn office, which simply wasn't appropriate or possible while he was being investigated in connection with Ms. Schechter's allegations. Can conduct that's not an adverse employment action but that's nevertheless perceived as negative by the employee support retaliation, in your view, or no? You think it has to be an adverse employment action? I think if it's minor acts that in total rise to the level of an adverse employment action, then yes, Your Honor. But if it doesn't rise to that, if it's stray comments or subjective assignments. What if it's none of those things but it's sufficient to deter other employees from complaining? Isn't that the test? Yes, Your Honor. That's right. So we don't require an adverse employment action. We just require some action that will almost naturally deter that employee or other employees from complaining about the same conduct. I think that's right, Your Honor. But again, here, the transfer, other than the subjective opinion of the plaintiff that this was a less prestigious position, there's nothing to suggest that it would dissuade anyone in these circumstances. He maintained his title. He maintained his salary. And he was restored to his position at the end of the investigation. He was returned to the Brooklyn office to his same position. And so I don't think that that amounts to the types of circumstances that would dissuade anyone from engaging in the protective activity in question. Does the city have a view on the applicability of Morgan to this case? Your Honor, yes. Because I saw your supplemental brief and I was a little confused. So as far as the failure to promote and failure to transfer allegations, those are discrete acts, Your Honor. We believe that Morgan does not apply. As far as the special projects, again, we believe those are discrete acts. They're easily identifiable and they were only over a three-month period as far as a complaint alleges. But again, even if these were found to fall under Morgan, they all fail on their own. Well, I have a more specific version of that question, I suppose. Is the city contending that our decisions in Owens and Duplan are not good law? No, I don't believe so, Your Honor. We're just saying that as far as I read them, they don't overrule Morgan's holding that discrete acts do not fall under a continuing violation doctrine. Not necessarily a continuing violation doctrine. I'm talking about the holding in Owens, which was before Morgan, that was reaffirmed in Duplan, which was after Morgan, but does not discuss Morgan, that when someone has filed a discrimination charge with the EEOC, it is not necessary to file another charge with the EEOC in order to exhaust administrative remedies for a claim of retaliation that occurred during the pendency of the EEOC investigation. Is the city asking us to revisit those holdings in light of Morgan? No, Your Honor. I don't believe we are. I think that the specific allegations here simply just don't fall under any such theory because they're really unrelated. As far as particularly something like special charges. But that sounds to me as if you are urging us to say, well, if they're unrelated to the initial claim, then they're not timely. But that wouldn't be the case with our own circuit precedent. We wouldn't be concerned about that, would we, under Duplan and the other precedent that Judge Lynch just cited to you? I believe there still is. I could be mistaken, Your Honor, but I believe there still must be some reason to think that, as Your Honor said, these types of the types of things that are being alleged would fall within the ambit of an investigation. So what you're suggesting is that there may be some things that you file an EEOC complaint and you're fired the next day. One would there's some inherent relationship or connection that is apparent. But where, for example, someone applies for another job, then there's a whole other process that undergoes that somehow that's it's so tenuous to say that that's retaliation, that it really isn't within that doctrine. Is that kind of the idea? Yes, Your Honor, that someone cannot simply bootstrap any complaint they have about their job, no matter when it happens to an EEOC complaint. There's got to be a closer connection. But isn't that something that Judge Kuntz needs to determine? In other words, this was a summary judgment, correct? Yes, Your Honor. Oh, well, wait, but I thought the statute of limitations action was 12b-6. That's right, Your Honor. I apologize. I understand. It's somewhat confusing because the appellant's brief has one heading that challenges summary judgment, but then there's a chunk of it that talks about the 12b-6 motion. So it's an understandable confusion. So based on the face of the complaint, we can determine that these are not sufficiently related. Is that the point? Yes, Your Honor, I think so. And I think that when you look at the decision in total, when you look at the summary judgment decision as well, there were many similar allegations that were not time-barred that the court discusses in detail, and the same reasoning applies as well. So, I mean, these are a few allegations that the court found time-barred at the 12b-6 stage. We don't believe that they fall under Morgan, but even if the court were to find that they do, you can look at the analysis in the summary judgment decision, and it really covers the entire picture. Indeed, the judge talks, and again, I think it's an understandable confusion given the number of issues in the case, but I think there are some things that were dismissed at the 12b-6 stage that are nevertheless discussed and dismissed again on the merits and the summary judgment stage. It's sometimes hard to keep track of a lot of relatively smaller acts. You know, you said we can decide on a 12b-6 motion that the special projects allegations are not related to the initial filing, but I asked your adversary whether this came up before the EEOC, and he didn't know. Do you know if it came up before the EEOC? I don't. I don't believe it did. Well, what if the answer is the discovery were to show that, yes, that Mr. Connolly, in some filing with the EEOC, said, and I was immediately taken off special projects and I'm not being given that, and the city said, no, that's not, and it was clear that it was before the EEOC. How would that affect our view of whether this retaliation claim is timely? So I think, Your Honor, if you look at the summary judgment decision, the court did sort of touch on these issues and find that to the extent that Mr. Connolly's duties changed because of the transfer, those were warranted by the allegations, that the temporary change of his duties. I understand that with respect to the transfer. And to some of the special projects. I'm just trying to understand your position on the special projects as to whether we really can decide it at 12b-6. I mean, you know, your argument might be that it was the plaintiff's burden to plead that. I don't know. But I'm not sure how we just assume without knowing what the parties presented to the EEOC that this is not something that the EEOC would investigate. Right. I mean, I think that's right, Your Honor. I don't believe there are any allegations in the complaint about special projects during this time period. Or at least that he complained about that being removed from special projects. And at this late date, to assert that, I think it's too late in the game for him to say that he informed the EEOC that he was being taken off special projects. And again, I think, Your Honor, in the complaints... The complaints can be amended at any time, right? I mean, at this point, Your Honor, discovery is closed and there's been a summary judgment motion that's been granted. So I think it's a little late for that. Okay. All right. Thank you. Thank you very much. Thank you, Your Honor. Mr. O'Neill. I'll address the too late comment first. I mean, it was dismissed on a 12b-6. We didn't get a chance to litigate them. We didn't get a chance to have discovery on that. We didn't have a chance to present evidence on it. Well, when you say you didn't get a chance to present evidence, this would be information within the possession of your client, whether he raised this with the EEOC. Right. But the issue was gone because the issue was taken out of the case on the 12b-6 motion. So there would have been no reason to have done that. Well, let me ask you. You have a good faith basis to think you could allege that? I thought you didn't know. Well, I don't have a memory. I don't know what's in there. There's a lot in there. I think there's a good chance there's some information. Well, you said earlier you made the representation that your client kept the EEOC advised of ongoing developments. That's right. But you don't recall specifically at this moment whether one of those ongoing developments was the special projects removal that in paragraphs 89 through 91 or 92 of the complaint are alleged as part of retaliation. Would you like an opportunity to go back and look at the EEOC file and submit a letter to the court indicating whether there is or isn't something in there that would give you a good faith basis for a possible amendment of the complaint or some other move to bring to the attention of us or of the district court that, if it's true, your client advised the EEOC of these facts? Of course, Your Honor. I don't know that in the end of the day it does or doesn't matter or is or isn't conclusive in some way. Maybe he did and you still lose, or maybe he didn't and you still win. But if that's become an issue and you want to consult the file and let us know what's in it, how long would it take you to do that, Mr. O'Neill? I can do it this week, I think. Well, how about the end of Wednesday? Two days, is that enough time? Wednesday of this week? Yeah. Yes, Your Honor. Okay. Thank you. I just want to touch on a couple of other things. Morgan doesn't say that discrete acts are not – discrete acts is not the test. It's whether they're actionable discrete acts, and that's a distinction that my adversary really kind of blurs over. And how do you think that matters? I'm not sure I understand the point you're making. Well, the point the city makes is that being taken off a special project is a discrete act, but it may not be actionable because it may not rise to the level. And, therefore, you may need a collection of them in order to satisfy Morgan. Your point – I mean, that's what Morgan is talking about, is that you can't bring the claim if it's time barred. They're not talking about whether or not it would be an adverse employment action. That's right. So how does – I'm not sure I understand what I'm supposed to take from the argument you just made to us, and I do want to understand your position. Maybe I could help you out, Mr. O'Neill. Well, I started to ask a question earlier and forgot to get to the second part, that I thought your argument was twofold. One was the Owens-Duplan argument that to the extent that you are complaining about a particular act as retaliatory that took place during the pendency of the EEOC investigation, it was not necessary to file a new charge. But I thought that you also had said earlier in the course of another answer that to the extent that you are saying, well, maybe that discrete act, even if it was timely, isn't enough to rise to the level of an adverse employment action as that term is understood in the retaliation context. If there were a series of such acts which collectively, sort of like a hostile environment claim, collectively constitute a pattern of behavior that would rise to the level of actionable retaliation, that so long, and this is, I think, something Morgan is about, at least if the last one is timely, then the entire pattern, if the last act in the pattern is timely, then you can complain about the entire pattern. Is that also – because it sounds like that's what you're shifting to or talking about now when you say maybe that wasn't a big enough act in the first place, but taken collectively with other things that came after, it should be regarded as part of a pattern that could be – that maybe the district court should have addressed separately on summary judgment as a different kind of action? I'm just trying to understand how this all plays out. Well, no, you're exactly right, Your Honor. That's our position is that if for some reason Owens and Duplan did not apply, we would still have a shot on Morgan. I do want to consider that point, but I also thought you just said that he was taken off a host of special projects immediately. So that led me to think that you thought there was cognizable retaliation almost immediately. Did I misunderstand you? No. No, okay. So if there was a recognition that he was being retaliated against immediately, what in the law allows you to delay bringing that to the EEOC's attention? Owens and Duplan. I don't need to file – I'm sorry? Owens and Duplan. I don't need to file a charge. But you think these cases say wait as long as you want, as long as the last act that you've got can be considered part of the pattern? No, that's a continuing violation argument. We're not making that. But while the EEOC charge is pending, yes, you do not need to file another charge. Now, if you get a response from the EEOC and they close out your charge and there's still retaliation, you're going to need to file a new EEOC charge. You see, why that doesn't make sense to me is just as I think – just as I have a problem with the notion that every day that a person feels he's being retaliated against, he has to file a new EEOC charge. I'll put that aside as a troubling conclusion. I think it's also troubling to say that someone who knows that he's being retaliated against can wait until the day before the EEOC files its decision before alerting the EEOC to that retaliation. I would think the law has an interest in you telling the EEOC you're being retaliated against as soon as you could reasonably be expected to know it. Am I missing something on that? Well, no, Your Honor. I mean that's a perfectly reasonable approach. It's just not what the cases say. So if that were the law, I wouldn't have a problem with it on a policy basis. It seems reasonable to me. Why isn't a more reasonable approach then, given the importance of the actual EEOC investigation, to – and maybe this goes to the letter that you'll submit – to at least incentivize the complainant to provide information about retaliatory acts to the EEOC without having to file a separate charge? If you're retaliated against and the EEOC is asking you about the underlying discriminatory act, why wouldn't you talk about retaliation? Oh, I understand, Your Honor. You might. And why isn't that a rule that we can coalesce around? Well, I think it's kind of hard sometimes to piece together the EEOC record, because there are phone calls and there are – not everything is investigated fully. There's a lot of charges that are not investigated at all. I prefer a rule that's easier to apply, but if the court establishes that rule, then I think it's perfectly reasonable. I don't think it should apply here, because the state of the law was such as it was. And under the laws that existed at the time, he didn't need to file a new EEOC charge. Was Mr. Connolly represented by counsel during his interaction? I know he's a lawyer himself, but was he represented by some employment lawyer while this EEOC charge was made? Well, no, not the first EEOC charge. Okay. I just want to clear up, there's nothing in terms of being put on new special projects. The record does not support that. The two references that the city makes in its supplemental brief are two very general statements that attorneys in this unit work on A, B, C, and various projects. So I don't think there's nothing in the record that says he was put on new special projects. We do not agree that the transfer was – I'm going to give you 30 more seconds, and then we'll wrap it up. Yes, Your Honor. I just have one or two more things. We really don't agree the transfer was appropriate. We don't challenge the transfer in the first instance, but after a certain period of time. The rationale behind the transfer was to separate him from Schechter. Well, Schechter left Brooklyn within a few months, so there was no reason to keep him out of Brooklyn. And he was not put back when the investigation ended. The investigation ended in October when the charges were found not to be sustained. All right. And he was not put back until April. So – and that's never been explained.  Thank you very much. All right, thank you, Your Honor. Judge Loyer, I'm sorry to interrupt, but might we ask the city if the – if Mr. Connolly is able to demonstrate that he did raise the question of special projects with the EEOC, whether the city agrees that that would at least make that part of the claim timely, whatever other arguments they may have, that timeliness would no longer be an issue if he can show that? Ms. West is on the screen, so let's hear from the government. I'm sorry, Your Honor. If he could show – could you just repeat that? We've just told him that he has a few days to show us that he did ask the – or present the question of special project denial to the EEOC. If he can show that, do you agree that that part of his retaliation claim is timely? I understand you have all the other challenges to it, but does timeliness then drop out of our consideration? I believe so, Your Honor. All right, I just wanted to make sure that we understood your position on that. Thank you. Thank you, Judge Loyer. Oh, thank you. Thank you. Thank you, Your Honor. Thank you. We'll reserve decisions. The matter is submitted, and we'll hear argument.